UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ZAHER MERHI,

                Plaintiff,

-v-

BULLION EXCHANGES, LLC, *et al.*,

                Defendants.

---

BULLION EXCHANGES, LLC, *et al.*,

                Cross-Claimants,

-v-

FEDEX CORPORATION,

                Cross-Claim Defendant.

23-CV-4577 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiff Zaher Merhi brings this action against Defendants Bullion Exchanges, LLC and Bullion Exchange, LLC (collectively "Bullion"), FedEx Corporation ("FedEx"), and John Doe (an unnamed employee and delivery driver for defendants). Bullion Exchange, in turn, asserts cross-claims against FedEx. Before the Court is FedEx's motion for partial summary judgment (ECF No. 37) as to the preemption of certain claims by federal law, the viability of Mr. Merhi's conversion claim, the viability of Bullion's indemnification cross-claims, and the enforceability of the limitation-of-liability clauses in FedEx's contract with Bullion.

1

I.  **Background**

    A.  **Factual Background**

The following facts are drawn from the parties' Local Rule 56.1 statements and responses. (ECF Nos. 48 ("Merhi SOMF"), 50 ("Bull. SOMF"), 51 ("FedEx SOMF").)[1]

Defendant FedEx is an "all-cargo air carrier operating under a certificate of authority" provided by the United States Department of Transportation. (FedEx SOMF ¶ 1.) On August 4, 2021, FedEx entered into an ongoing shipment agreement with Bullion titled the "FedEx Transportation Services Agreement." (*Id.* ¶ 6.) That agreement incorporated by reference the "FedEx Service Guide" for U.S. shipments. (*Id.* ¶¶ 7-8.)[2] The Service Guide contains the following provision, titled "Declared value and limits of liability (not insurance coverage)":

> The declared value of any package represents our maximum liability in connection with a shipment of that package, including, but not limited to, any loss, damage, delay, misdelivery, nondelivery, misinformation, any failure to provide information, or misdelivery of information relating to the shipment. Exposure to and risk of any loss in excess of the declared value is assumed by the shipper. You may transfer this risk to an insurance carrier of your choice through the purchase of an insurance policy. Contact an insurance agent or broker if you desire insurance coverage. WE DO NOT PROVIDE INSURANCE COVERAGE OF ANY KIND.

(*Id.* ¶ 11.) The provision also states that "[w]ith respect to U.S. express package services, unless a higher value is declared and paid for, our liability for each package is limited to US$100." (*Id.* ¶ 12.) Finally, the provision limits the "maximum declared value" of

---

[1] In lieu of a conventional Rule 56.1 statement, Plaintiff Merhi's counsel submitted something more akin to an answer, purporting to either "admit" or "deny" the statements in FedEx's Rule 56.1 statement. (Merhi SOMF.) Where Mehri either admits or fails to address facts in FedEx's Rule 56.1 statement, the Court accepts them as true.

[2] Mr. Merhi protests that these paragraphs are, respectively, "a question of law" and "a question of credibility." (Merhi SOMF ¶¶ 7-8.) The Court is unsure what he means, as these are direct quotes from the agreements. Mr. Merhi does not challenge the authenticity of these documents, nor does he provide an alternative statement of facts.

"[p]recious metals, including, but not limited to, gold and silver bullion," to "US$1,000." (*Id.* ¶ 13.)[3]

At some point before October 4, 2022, Plaintiff Merhi purchased $86,563.20 in gold coins from Defendant Bullion Exchange, LLC. (Bull. SOMF ¶¶ 1, 7.) Although Bullion's terms and conditions state that it "normally ships with the United States Postal Service," it "may at its discretion choose to use a different shipping provider." (Bull. SOMF ¶ 3.) In Mr. Merhi's case, Bullion chose to ship his package using FedEx. Bullion created a shipping label for the package "using a website called Ship Station." (FedEx SOMF ¶ 23.) According to FedEx's SOMF, Bullion's Co-CEO, Eric Gozenput, testified that Bullion is a high-volume shipper, selling "hundreds of millions of dollars of gold and silver bullion each year," and "ship[ping] from five hundred to over a thousand shipments of bullion to its customers each day." (*Id.* ¶¶ 16-18.) Mr. Gozenput also testified that he is "familiar with 'declared value'," and that he "knew and understood that FedEx limits 'declared value' to $1,000.00 for shipments containing 'precious metals'" including gold. (*Id.* ¶¶ 19-20.) Before shipping Mr. Merhi's package, Bullion "purchased third-party insurance . . . to cover losses beyond" FedEx's $1,000 limit. (*Id.* ¶ 21.)

The shipment was picked up by FedEx from Bullion's office in Manhattan on October 4, 2022, and arrived at Mr. Merhi's address at 43 Island Point in The Bronx on October 5. (*Id.* ¶ 3.)

---

[3] Mr. Merhi objects that these paragraphs are "question[s] of law." (Merhi SOMF ¶¶ 10-12.) The Court is again unsure what Mr. Merhi means, and in any event, such objections are an inadequate response to a Rule 56.1 statement. Mr. Merhi also objects in a separate affidavit that the Court should disregard the Declaration of Donna Moore filed by FedEx (ECF No. 38-1) because "I have never interacted with this paralegal or anyone else at FedEx" and "there is no basis for us to know that the paralegal has access to shipping and records." (ECF No. 49 ¶¶ 4-5.) There is no rule that only lawyers may file declarations or submit exhibits to the Court, and here, Ms. Moore identifies herself as "custodian of records for FedEx," and states that she has "access to shipping and other records[] and can testify about the contents of those records." (ECF No 38-1 ¶ 1.) Mr. Merhi's objections are thus immaterial.

According to FedEx, "the shipment was delivered and the courier, Dallas Jaquez, obtained a signature upon delivery." (*Id.* ¶ 24.) FedEx's Global Positioning System ("GPS") records "indicate that the courier stopped at 43 Island Point" on the day of the delivery, and that "a delivery scan was entered [on that day] around the corner from 43 Island Point." (*Id.* ¶ 27, 25.)[4] Mr. Merhi, in his Rule 56.1 statement, states that the signature obtained is of an unknown source and denies FedEx's statements about its GPS data. (Merhi SOMF ¶ 23-25.) However, Mr. Merhi does not, as S.D.N.Y. Local Rule 56.1(d) requires, include "citation[s] to evidence which would be admissible" alongside his denials. FedEx's statements about the signature and GPS data are therefore deemed admitted for purposes of this opinion. *See Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998). Mr. Merhi contends "that no one was at home at the delivery time on October 5," and that "he did not receive the gold bullion." (FedEx SOMF ¶¶ 26-27.)

B.      **Procedural Background**

Mr. Merhi commenced this action against Bullion and FedEx in New York Supreme Court, Bronx County, on April 24, 2023. FedEx filed a notice of removal to this court on May 31, 2023. (ECF No. 1.) FedEx then filed an answer on June 5, 2023 (ECF No. 5), and Bullion filed an answer with cross-claims against FedEx on July 14, 2023 (ECF No. 7). FedEx filed an amended answer addressing Bullion's cross-claims on July 26, 2023. (ECF No. 10.) Discovery was completed by February 15, 2024 (*see* ECF No. 33), and FedEx moved for partial summary judgment as to both Mr. Merhi's claims and Bullion's cross-claims on February 29, 2024. (ECF No. 37.) Bullion opposed summary judgment on June 18, 2024. (ECF Nos. 47, 50.) Mr. Merhi opposed summary judgment with a Rule 56.1 statement of material facts (Merhi SOMF), and an

---

[4] FedEx's Statement of Material Facts skips paragraph 10. This opinion refers to the paragraphs as numbered in the SOMF, even when misaligned with the other parties' briefing.

"affidavit" signed by Mr. Merhi (ECF No. 49), but did not file a memorandum of law. Mr. Merhi's counsel explained in a letter appended to his 56.1 statement that "Plaintiff intends to file only the necessary documents as required under the Federal Rules of Procedure at this time." (ECF 48-1.) FedEx filed a reply in further support of partial summary judgment on June 25, 2024. (ECF No. 53.)

## II.     Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In deciding a motion for summary judgment, a court must consider the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995).

## III.    Discussion

### A.     Compliance with Rule 7.1

As an initial observation, Mr. Merhi failed to comply with S.D.N.Y. Local Civil Rule 7.1, which requires that "all motions . . . must include . . . [a] memorandum of law, setting forth the cases and other authorities relied on in support of the motion." In opposition to FedEx's motion for summary judgment, Mr. Merhi's attorney filed a Rule 56.1 statement of material facts (ECF No. 48) and Mr. Merhi himself filed an "affidavit" (ECF No. 49) purporting to oppose FedEx's "Declaration of Donna Moore" (ECF No. 38-1). Neither filing cites relevant case law, and neither Mr. Merhi nor his counsel filed anything else that the Court can construe as a memorandum of law. Mr. Merhi's counsel appears to have done this intentionally, writing in a

5

separate letter to the Court that "Plaintiff intends to file only the necessary documents as required under the Federal Rules of Procedure at this time." (ECF No 48-1 at 1.) "Failure to file a memorandum of law in opposition to the opposing party's motion is, by itself, a sufficient basis to grant the motion." *See Healthfirst, Inc. v. Medco Health Sols., Inc.*, No. 03-CV-5164, 2006 WL 3711567, at *3 (S.D.N.Y. Dec. 15, 2006) (quoting *Kamara v. United States*, No. 04-CV-626, 2005 WL 2298176, at *1 (S.D.N.Y.Sep.20, 2005)). "[I]n the interest of thoroughness," the Court will address Mr. Merhi's opposition on its merits.[5] *Id.* The Court will not, however, impute arguments on Mr. Merhi's behalf where they have not been made by Mr. Merhi or his counsel in the first instance.

### B. Mr. Merhi's Claims

Mr. Merhi's Complaint appears to assert six distinct causes of action as to FedEx. First, Merhi alleges that FedEx "negligently hired and retained" the employee who lost his package (Compl. ¶ 32), and that FedEx "negligently hired and employed" the driver who delivered the package (*id.* ¶ 33). Second, Merhi alleges that FedEx "negligently lost and misplaced" his package.[6] (*Id.* ¶ 42.)[7] Third, Merhi alleges that FedEx acted in a manner "contrary to the agreement between defendants." (*Id.*)[8] Fourth, Merhi asserts a conversion claim, alleging that a

---

[5] The Court also notes that FedEx itself failed to timely file its Rule 56.1 statement on the docket. (ECF No. 52.) Given that FedEx did timely communicate the statement to opposing parties and no party has objected, the Court will treat the statement as timely filed for purposes of this opinion. The Court is not, though, inclined to enter summary judgment against Mr. Merhi based solely on his technical failure to comply with Local Rule 7.1.

[6] Merhi repeats certain claims in multiple of his causes of action. For example, Merhi includes a negligent hiring claim against FedEx in both the first and the second causes of action.

[7] Merhi's sixth cause of action merely restates the elements of his negligence claim and gestures at putative damage calculations. (Compl. ¶¶ 62-77.) The Court does not view it as asserting an independent cause of action.

[8] This is formally included in the second cause of action (negligence), but the Court construes it as raising an independent contract claim.

FedEx employee intentionally signed for and stole his package. (*Id.* ¶¶ 47, 51.) Fifth, Merhi alleges that Defendants, including FedEx, acted with "reckless disregard" and therefore committed "gross negligence." (*Id.* ¶ 54-55.) Sixth, Merhi asserts unspecified statutory claims, alleging that Defendants' conduct "violat[ed] those statutes, ordinances, rules and regulations . . . of which this Court will take Judicial Notice at the time of the trial." (*Id.* ¶ 60.)

### 1. Negligence

Mr. Merhi does not specify the sources of law pursuant to which he asserts any of his claims. In its memorandum of law, FedEx argues that Merhi's negligent hiring and retention, negligence, and gross negligence claims are based on "state common law"[9] and that his conversion claim is based on "[f]ederal common law." (ECF No. 38 ("Mem.") at 10.) FedEx then argues that Mr. Mehri's state-law tort claims must be dismissed because they are preempted by the federal Airline Deregulation Act, 49 U.S.C. §41713 ("ADA"). (Mem. at 11.)

To the extent that Mr. Merhi's claims are based on *state* common law, FedEx is correct that they are preempted. The ADA "bars state-imposed regulation of air carriers," *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995), which extends to state tort law, *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 281 (2014). ADA preemption applies to an air freight company like FedEx when a plaintiff's claims are based on the company's shipping services. *N. Am. Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 234 (2d Cir. 1978).

However, "a shipper whose state-law tort claims are preempted by the ADA may still be able to pursue *federal* common law tort claims." *Gemnet Exp., Inc. v. Fed. Exp. Corp.*, No. 06-

---

[9] Perhaps out of caution, FedEx also identifies a "second claim for negligence" and a claim for the "breach of duty of reasonable care" in the Complaint. (Mem. at 10.) The Court understands both as subsets of Merhi's primary negligence claim and does not address them separately.

CV-2648, 2009 WL 928299, at *5 (S.D.N.Y. Mar. 30, 2009) (Freeman, Mag. J.); *see also Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., Inc.*, 235 F.3d 53, 59 (2d Cir. 2000) ("[F]ederal common law continues to control the issue of liability of air carriers for lost or damaged shipments even after deregulation."); *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 929 n.16 (5th Cir. 1997) ("[A] cause of action against an interstate air carrier for claim for property lost or damaged in shipping arises under federal common law."). The Court accordingly "read[s] a federal-law negligence claim into [Mr. Merhi's] complaint based on his allegation about the loss of his property." *Feldman v. United Parcel Serv., Inc.*, No. 06-CV-2490, 2008 WL 800989, at *10 (S.D.N.Y. Mar. 24, 2008) (Dolinger, Mag. J.), *opinion modified on reconsideration on other grounds*, No. 06-CV-2490, 2008 WL 2540814 (S.D.N.Y. June 25, 2008) (Dolinger, Mag. J.). Such claims are not preempted, and the Court declines to grant summary judgment dismissing them.

FedEx also argues that "any claims that survive preemption are governed by [its contracts with Bullion Exchange]." (Mem. at 16 (capitalization altered).) Those contracts contain a "declared value" clause limiting FedEx's liability to $1,000. (*Id.* at 18.) FedEx is correct that, if the limitation of liability is enforceable against Bullion Exchange, it is also enforceable against Mr. Merhi: "[w]hen an intermediary contracts with a carrier to transport goods, the cargo owner's recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 33 (2004). This is because the carrier has "'the right to assume that the [shipper] could agree upon the terms of the shipment'; it could not be expected to know if the [shipper] had any outstanding, conflicting obligation to another party." *Id.* (quoting *Great Northern Ry. Co. v. O'Connor*, 232 U.S. 508, 514 (1914)). If enforceable, the limited liability clause would also apply to Mr. Mehri's "gross

8

negligence" claim, as "nothing short of intentional destruction or conduct in the nature of theft of the property will permit a shipper to circumvent the liability limitations in a released value provision." *Am. Cyanamid Co. v. New Penn Motor Exp., Inc.*, 979 F.2d 310, 315-16 (3d Cir. 1992). Because the Court concludes that the limited liability clause is enforceable, *see infra* Section III.C.2, Mr. Merhi's recovery on his three negligence claims is limited to $1,000.

### 2. Conversion

FedEx also requests summary judgment applying the limited liability clause to Mr. Merhi's conversion claim. (Mem. ¶¶ 17-19.) Because the ADA preempts state-law conversion claims, the Court applies federal common law. *See Baloise Ins. Co. v. United Airlines, Inc.*, 723 F. Supp. 195, 198 (S.D.N.Y. 1989) ("It is clear that [the conversion claim in] this case is governed by the federal rule. Federal common law governs a carrier's liability for the loss of goods during interstate shipment.").

Under federal common law, a limited liability clause does apply to ordinary conversion claims. *See Nippon Fire*, 235 F.3d at 60 ("Such clauses, therefore, limit recovery not only for breach of contract, but also . . . conversion."); *Owens-Corning Fiberglas Corp. v. U.S. Air*, 853 F. Supp. 656, 665 (E.D.N.Y. 1994) ("A valid limitation of liability clause also applies to claims sounding in tort, and is enforceable against a claim of conversion."). However, intentional or willful conversion claims may not be so limited. *See Baloise Ins. Co.*, 723 F. Supp. at 198 ("When a bailee commits the intentional tort of conversion, courts will not enforce limitation of liability provisions on grounds of public policy."); *see also Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., Inc.*, 45 F. Supp. 2d 288, 292 & n.2 (S.D.N.Y. 1999) ("[A]n enforceable limitation of liability clause precludes recovery . . . [on] conversion theories," meaning that "[t]o assert a claim for conversion successfully, a plaintiff must plead willful or intentional misconduct of the common carrier."); *Owens-Corning*, 853 F. Supp. at 665-66 ("[A] plaintiff

9

alleging conversion against a common carrier must plead and prove willful or intentional misconduct." (quotation marks omitted)). To prevail on an intentional or willful conversion claim, a plaintiff must set forth "some affirmative proof"—otherwise, "courts applying federal common law will enforce a contractual limitation of liability provision." *Baloise Ins. Co.*, 723 F. Supp. at 198. FedEx is thus correct that, for Mr. Merhi's conversion claim to avoid the liability limitation clause, he must prove that FedEx intentionally or willfully stole his shipment for its own use.

Assuming without deciding that Mr. Merhi has stated a prima facie claim for common-law conversion, he has provided no facts nor evidence from which a reasonable jury could determine that an *intentional or willful* conversion occurred. Mr. Merhi does not claim that FedEx intended to take the package for its own use. While he does assert that an agent or employee of FedEx "sign[ed] for the package in an attempt to" take it from Mr. Merhi, he points to no facts or evidence supporting this allegation. (Compl. ¶ 47.) Nor could he, as he separately alleges that he "does not know" the identity of the person who signed for the package. (Compl. ¶ 27.) When a "[p]laintiff alleges conversion based solely upon defendant's lack of explanation for the loss" but "does not plead willful or intentional misconduct by the defendant" or provide "facts supporting the existence of any such conduct," such a "conclusory conversion claim . . . cannot withstand defendant's motion for summary judgment." *U.S. Gold Corp. v. Fed. Exp. Corp.*, 719 F. Supp. 1217, 1226 (S.D.N.Y. 1989). Mr. Merhi can therefore only recover a maximum of $1,000 on his conversion claim.

### 3. Breach of Contract

FedEx acknowledges that the ADA does not preempt Mr. Merhi's contract claim, and that Mr. Merhi can "recover against FedEx as a third-party beneficiary." FedEx argues,

however, that Mr. Merhi can recover "only as much as the shipper Bullion could recover"—that is, $1,000. (Mem. at 10.)

FedEx is correct that "[a] third-party beneficiary of a contract has no greater rights than the promisee." *Aretakis v. Fed. Exp. Corp.*, No. 10-CV-1696, 2011 WL 1226278, at *6 (S.D.N.Y. Feb. 28, 2011) (Fox, Mag. J.), *report and recommendation adopted*, No. 10-CV-1696, 2011 WL 1197596 (S.D.N.Y. Mar. 25, 2011). Because the $1,000 liability limitation clause is enforceable against Bullion Exchange, *see infra* Section III.C.2, it is also enforceable against Mr. Merhi, limiting Mr. Merhi's maximum recovery to $1,000 should he prevail on his breach-of-contract claim.

### 4. Statutory Claims

Finally, Mr. Merhi appears to assert statutory claims in his complaint. Because the Court is unaware of any federal statutes under which such claims may be brought, it construes Mr. Merhi's sole sentence about statutory causes of action as referring to state statutes. However, as with state tort law, state statutes regulating air shipping are preempted by the ADA. *See Wolens*, 513 U.S. 219, 228. The Court therefore grants summary judgment on such claims, to the extent that Mr. Merhi intends to assert them.

### C. Bullion's Cross-Claims

Bullion asserts four cross-claims in its Answer. (ECF No. 7 ("Bull. Ans.") at 1.) For two such claims—the first and fourth—Bullion specifies no source of law. For the second cross-claim, Bullion states that it is "pursuant to Article 14 of the CPLR." (*Id.* at 11.) For its third cross-claim, Bullion states that it is "pursuant to common law." (*Id.*)

FedEx characterizes Bullion's claims as based on "state common law" and argues they must be dismissed on preemption grounds, except insofar as they are based on breach of contract (Mem. at 14.) In its opposition, Bullion accepts this characterization, explaining that "Bullion's

11

crossclaims do not seek to enlarge the contractual obligations that the parties entered. Rather, Bullion's crossclaims seek to enforce those contractual obligations." (ECF No. 47 ("Bull. Opp.") at 3.) Specifically, Bullion states that it intends to assert only causes of action for "breach of contract and breach of duty of care *that Fed. Ex. agreed to in its contract*." (*Id.* (emphasis added).) The Court therefore grants summary judgment for FedEx on all of Bullion's cross-claims except insofar as they assert contractual indemnification or breach of contract.

### 1. Contractual Indemnification

Bullion's fourth cause of action states that "pursuant to the aforesaid contracts and/or agreements, the Co-Defendants are obligated to defend, indemnify and hold harmless the Defendant pursuant to the terms thereof." (Bull. Ans. at 12.) FedEx responds that there is no such indemnification or hold harmless clause in any of the contracts it signed with Bullion. (Mem. at 14; ECF No. 38-4; ECF No. 38-5; ECF No. 38-6). Bullion does not contest this, and the Court is unable to find any such provision in the agreements that FedEx submitted along with its summary judgment papers. The Court therefore dismisses Bullion's contractual indemnification cross-claim.

### 2. Conventional Breach of Contract

Bullion contends that FedEx breached the terms and conditions agreement with Bullion when its delivery agent personally signed for the package and failed to verify the recipient's age with any identification. (Bull. Opp. at 4; ECF No. 50 ("Bull. SOMF") ¶¶ 12-13.) FedEx does not contest this, but rather seeks to limit its liability to $1,000. (Mem. at 16.) Bullion responds that "there is a genuine dispute of material fact with regard to this issue of whether the limitation-of-liability provision is unenforceable due to a lack of reasonable notice." (Bull. Opp. at 5.)

While, under federal common law, "contractual provisions that purport to relieve carriers from liability for loss or damage to cargo *altogether* are invalid and unenforceable as against

12

public policy," "contractual provisions that merely *limit* carrier liability for lost or damaged cargo—such as those incorporated into the air waybills in this case—ordinarily are valid and enforceable so long as they (1) are set forth in a 'reasonably communicative' form, so as to result in a 'fair, open, just and reasonable agreement' between carrier and shipper; and (2) offer the shipper a possibility of higher recovery by paying the carrier a higher rate." *Nippon Fire*, 235 F.3d at 59–60 (quoting *Hill Constr. Corp. v. Am. Airlines, Inc.*, 996 F.2d 1315, 1317 (1st Cir. 1993)) (emphasis added). This is known as the "released value" doctrine. *Id.* "The released value doctrine does not require that the alternative liability limit offered by a carrier be the full value rate." *Polesuk v. CBR Sys., Inc.*, No. 05-CV-8324, 2006 WL 2796789, at *13 (S.D.N.Y. Sept. 29, 2006); *accord Kemper Ins. Cos. v. Fed. Exp. Corp.*, 252 F.3d 509, 513 (1st Cir. 2001) ("[The plaintiff] has not cited, nor have we discovered, any case in which a court invalidated a contract providing two discrete levels of coverage. We are loath to police this line when other courts have chosen not to do so.").

     Bullion argues that there was a "lack of reasonable notice" regarding the declared value clause contained in FedEx's Service Guide, as incorporated into FedEx's Transportation Services Agreement. (Bull. Opp. at 5.) The Court disagrees. First, Bullion does not dispute that it in fact took advantage of the option to secure a higher recovery by paying the carrier a higher rate—that is, it paid an extra $12.50 to increase FedEx's liability from $100 to $1,000. (FedEx SOMF ¶ 15.) Second, Bullion's co-CEO testified in his deposition that he is "familiar with 'declared value'" and that he "knew and understood that FedEx limits 'declared value' to $1,000.00 for shipments containing 'precious metals . . . .'" (*Id.* ¶¶ 19-20.) Third, Bullion purchased third-party insurance "to cover losses beyond the $1,000.00 declared value limit." (*Id.* ¶ 21.) Fourth,

Bullion is a sophisticated shipper that "ships from five hundred to over a thousand shipments of bullion to its customers each day." (*Id.* ¶ 18.)

Together, this paints an unambiguous picture of a "fair, open, just and reasonable agreement." *Nippon Fire*, 235 F.3d at 59.  The terms are apparent from FedEx's contract language; Bullion was in fact aware of the terms; Bullion actually accepted FedEx's offer to pay for a higher level of protection; and Bullion then purchased third-party insurance to provide extra protection that it knew was not available from FedEx.

Bullion's only response is that it separately purchased FedEx's "adult signature option," which is an "additional service . . . at a higher cost that Bullion agreed to pay." (Bull. Opp. at 4.) This is irrelevant, however, to the matter of FedEx's limited liability.  Bullion entered into a contract requiring FedEx to provide certain services, including the signature requirement.  It separately contracted with FedEx to limit FedEx's liability for failure to adequately provide those services. Even if "Bullion was under the impression that it was obtaining additional services and protection on its shipments" (Bull. Opp. at 5), there is no reasonable argument that it believed that it was paying for additional liability on the part of FedEx.  The fact that Bullion paid for signature protection is what allows it to potentially recover *up to* $1,000 for FedEx's alleged breach of that obligation.  It does not increase FedEx's maximum liability above that $1,000 limit, and no reasonable factfinder could interpret the signature requirement in that way.  Accordingly, the Court grants FedEx's request for summary judgment limiting its contractual liability to Bullion to $1,000.

## IV. Conclusion

For the foregoing reasons, FedEx's motion for summary judgment is GRANTED in part and DENIED in part.

Plaintiff Merhi's state-law tort claims are dismissed, and FedEx's liability as to Merhi's federal common-law tort claims and breach-of-contract claim is limited to $1,000.  Cross-

14

claimant Bullion's state-law tort and indemnification claims, and its contractual indemnification claim, are dismissed. FedEx's liability as to Bullion's breach-of-contract claim is limited to $1,000.

The Clerk of Court is directed to close the motion at Docket Number 37.

SO ORDERED.

Dated: September 23, 2024
       New York, New York

_____
J. PAUL OETKEN
United States District Judge